Willa McMULLEN, Appellant,

v.

CITY OF DEL CITY, Appellee.

No. 86571.

Court of Appeals of Oklahoma,
Division No. 1.

April 19, 1996.

Certiorari Denied June 19, 1996.

James E. McWright, Oklahoma City, for Appellant.

David W. Kirk, Oklahoma City, for Appellee.

### MEMORANDUM OPINION

CARL B. JONES, Presiding Judge:

Appellant sued Appellee municipality alleging the city's "agents, servants, and employees have engaged in intentional and willful conduct towards the Plaintiff with the intent of causing her emotional distress." After taking Appellant's deposition, Appellee filed a motion for summary judgment asserting that its employees, whatever they had done, had not been acting within the scope of their employment. The trial court granted the motion and this appeal followed.

The undisputed "facts" recited in Appellee's motion for summary judgment were (1) that Appellant's claim was one for intentional infliction of emotional distress; (2) that Appellant had admitted in her pre-trial discovery deposition that the city's employees were not acting in good faith; and (3) that Appellant had testified that the city's employees did not act negligently or mistakenly. The evidentiary materials submitted with Appellee's summary judgment motion consisted only of excerpts from Appellant's discovery deposition in which she agreed with suggestions by defense counsel that Appellee's employees had not acted in good faith.[1]

Appellant responded to the motion with several more excerpts from her deposition describing the affronts she said she had suffered, and an affidavit from the attorney who

---

1. Appellee placed particular emphasis on the following exchange:

Q. Do you understand—tell me if I'm wrong. I read that [the allegation of intentional and willful conduct in the petition] to say that you're saying that employees, or people of Del City, have intentionally and willfully acted intending to cause you emotional distress and harm. Is that true?
A. Yes.
Q. * * * And that as a result of that intentional and willful conduct, you suffered extreme emotional distress. * * *
A. Yes.

\* \* \* \* \* \*

Q. Again, I don't want to debate legal points with you. There is a cause of action in Oklahoma called intentional infliction of emotional distress. Is your understanding that that's what you're claiming in this case?
A. I don't know that—all the particulars that you're talking about.
Q. I guess my point is— ·
A. I feel that that's what happened.
Q. Fair enough. I guess my point is, the only times in the Petition that you've mentioned any conduct by Del City's employees, you've said that the conduct was intentional and willful towards you, and intending to cause you harm.

And I want to draw a distinction between that type of conduct and, say, where somebody is merely negligent, or maybe does something they shouldn't have, but didn't really intend to do something wrong, or somebody makes a mistake, and they really didn't intend to do something.

Is it your position, ma'am, that the Defendants, when they engaged in these actions we're going to talk about here in a minute, they did it intentionally and willfully, knowing that they were just—
A. Absolutely.
Q. They were out to get you, or harm you, or bother you, or cause you to be upset?
A. Absolutely.

\* \* \* \* \* \*

Q. I take it ma'am—one more point, kind of. There is a concept in the law—and you don't have to accept this. I'm just telling you—where, in certain instances, people can act in good faith. That's kind of a buzz word. And even acting in good faith, they can make mistakes.

I want to draw a distinction between—I mean, I know you haven't read the law, but does good faith mean anything to you? If somebody acts in good faith, do you understand that to mean, well, they're acting with, maybe, an honest intent, but they just make a mistake, okay?
A. I understand what you're saying.
Q. Fair enough.

I want to draw a distinction between—or see if there is a distinction, in your mind, between good faith actions and the types of actions that you've alleged in your lawsuit.
A. Yes, there is.
Q. You're saying—and tell me if I'm wrong. I don't mean to put words in your mouth. You're saying that these wrongful acts were not made in good faith, that instead, they were done intentionally and wrongfully to harm you; is that correct?
A. That is correct.

first represented her. Those evidentiary materials reveal that Appellant was involved in a traffic accident, and was cited by a Del City police officer for driving on the wrong side of the road. The accident report was amended, said Appellant, to change the point of impact to the opposing lane of traffic. The Appellant contested the citation. When the municipal traffic court upheld the citation, a city police officer in attendance stood up and shouted, "Yea we won, we're having a pizza party, and I am buying the pizza." The traffic court judge admonished the officer that his behavior was inappropriate. Appellant later videotaped two Del City police officers eating pizza in front of her house. (Appellant attached a copy of the videotape to her response to the summary judgment motion, but it was not included in the appellate record.) Appellant also testified in her deposition about being identified by the police (she said wrongly) as complaining to the police that one of her neighbors harbored a barking dog, and about being listed (again, she asserted, wrongly) as a witness on a traffic citation issued to another person.[2] There is also some indication that Appellant was fearful of one or more city police officers, and that at least one of them had made threatening gestures or remarks to her.

■ The rule governing summary judgment practice places upon a moving party the initial burden to show that it is entitled to summary judgment. *Hargrave v. Canadian Valley Electric Cooperative, Inc.,* 792 P.2d 50, 55 (Okla.1990); *Loper v. Austin* 596 P.2d 544, 545 (Okla.1979). If, and only if, the movant satisfies this initial burden must the motion opponent demonstrate the existence of a substantial dispute as to some material fact, or some reasonable inference in its favor from the uncontroverted facts. *Spirgis v. Circle K Stores, Inc.,* 743 P.2d 682, 684 (Okla. App.1987), *cert. denied, approved for publication.* It is often said that the facts shown by the summary judgment record must be viewed in a light most favorable to the non-moving party, *see, e.g., Hargrave v. Canadi-*

*an Valley Elec. Co-op, Inc.,* 792 P.2d 50, 55 (Okla.1990), but the "most favorable light" standard is merely another way of expressing the principle that summary judgment, whether for the movant or against, should be granted only when there is no reasonable factual inference or legal conclusion which favors a well-pleaded theory of the non-moving party. *See Buckner v. General Motors Corp.,* 760 P.2d 803, 812 (Okla.1988); *Runyon v. Reid,* 510 P.2d 943, 946 (Okla.1973).

■ In *Parker v. City of Midwest City,* 850 P.2d 1065 (Okla.1993), the court described a conundrum facing anyone who sues a municipality in Oklahoma for malicious prosecution, which *must* put an end to any such claim pressed against a governmental entity covered by the Governmental Tort Claims Act. To sue any statutory governmental entity in tort, the plaintiff must prove he was harmed by an employee acting within the scope of his employment. To prove a claim for malicious prosecution, one would have to show that the tortfeasor acted maliciously and without probable cause. But, as the court noted, a governmental employee only acts within the scope of his employment when he acts in good faith. Therefore, a plaintiff could not possibly hold a governmental entity liable for malicious prosecution, because the only way to prevail on such a claim would be to present evidence which necessarily took the bad actors outside the scope of their employment.

Recently the court in *Nail v. City of Henryetta,* 911 P.2d 914 (Okla.1996), distinguished *Parker* precisely because the plaintiff pleaded *alternative* theories of intentional tort (assault and battery) and negligence. The tortfeasor in that case had pushed the plaintiff down while leading him from a police car into the station. The court held that the evidentiary record revealed a substantial controversy of fact about whether the officer had acted intentionally to hurt the plaintiff or had merely manifested his disgust in a negligent manner, and reversed summary adjudi-

---

2. Appellant, a process server, apparently discovered that the operator of a day care center had had her driver's license suspended. Appellant reported that fact to the police, along with her belief that the person continued to transport children in the day care center van, prior to the citation in question. The record does not show the nature of the citation given to the day care operator.

cation of the scope of employment issue in the plaintiff's favor. *See id.,* 911 P.2d at 917–18.

 By contrast, in the case presently before this Court, Appellant pleaded only a claim for the intentional tort of outrage. In response to the motion for summary judgment, she conceded that outrage was the sole theory of her claim. One commits the tort of outrage, or intentional infliction of emotional distress, by extreme and outrageous conduct which, through the actor's intent or recklessness, causes severe emotional distress to another. *Breeden v. League Services Corp.,* 575 P.2d 1374, 1376–77 (Okla.1978); *see Munley v. ISC Financial House, Inc.,* 584 P.2d 1336, 1338 (Okla.1978). Extreme and outrageous conduct is conduct which is "so outrageous in character, and extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as utterly atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, Comment *d* (1965), quoted in *Breeden,* 575 P.2d at 1376. The trial court, in the first instance, must test the evidence as a matter of law and decide whether both outrageous conduct and severe emotional distress may be proved before submitting those issues to the trier of fact for final determination. *Eddy v. Brown,* 715 P.2d 74, 76–77 (Okla. 1986); *Breeden,* 575 P.2d at 1377; *see* Restatement § 46, Comments *h* and *j.*

It appears that the Appellant here is confronted with the same conundrum as the plaintiff in *Parker* faced. There is no way to prove a claim for outrage if the defendant has acted in good faith. *Accord, Hawkins v. Greene,* 311 S.C. 88, 427 S.E.2d 692, 693 (Ct.App.1993) (when undisputed evidence shows the defendant acted in good faith, his conduct cannot be characterized as outrageous). But, if, as Appellant has pleaded and asserted in her deposition, the officers of the Del City Police Department acted intentionally and willfully to cause her emotional distress, and never acted in good faith, then we have before us neither a legal nor an evidentiary basis for holding that the trial court erred by entering summary judgment for Appellee.

Accordingly, we hold that the trial court did not err by granting judgment as a matter of law in favor of Del City. Its judgment is therefore affirmed.

AFFIRMED.

GARRETT and JOPLIN, JJ., concur.