2015 OK 85

Elizabeth GOWENS, individually, Plaintiff/Appellee,

v.

Ethan BARSTOW, individually, Defendant,

Norman Regional Hospital Authority, a public trust d/b/a Norman Regional Hospital and Emsstat, Defendants/Appellants.

No. 112,309.

Supreme Court of Oklahoma.

Dec. 15, 2015.

Chris Hammons and Jason Hicks, Laird Hammons Laird, PLLC, Oklahoma City, Oklahoma, for Plaintiff/Appellee.

Beverly S. Pearson and Brion Brady Hitt, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma, for Defendants/Appellants.

## FACTS AND PROCEDURAL HISTORY

COMBS, V.C.J.

¶ 1 On July 3, 2007, a paramedic supervisor, Defendant Ethan Barstow (Mr. Barstow), collided with a vehicle driven by the Plaintiff/Appellee, Elizabeth Gowens (Ms. Gowens) resulting in property damage to both vehicles and physical injury to Ms. Gowens. At the time of the collision, Mr. Barstow was a paramedic supervisor for the Defendant/Appellant EMSSTAT which is a division of the Defendant/Appellant Norman Regional Hospital Authority, a public trust d/b/a Norman Regional Hospital. Norman Regional Hospital is a political subdivision for purposes of the GTCA. For purposes of this opinion, Norman Regional Hospital and EMSSTAT will be collectively referred to as "NRH". Ms. Gowens initially sued Mr. Barstow and the City of Norman ex rel. EMSSTAT for her injuries. Both Mr. Barstow and the City of Norman were later dismissed from the lawsuit.

¶ 2 Central to this case is the intersection where the accident occurred. The intersection has been described as being "almost a five-way intersection."[1] It consists of east/west Alameda Street/Alameda Drive and north/south 72nd Ave. SE, Norman, OK. At the intersection, Alameda Street does two things: 1) it continues eastward past the intersection and becomes Alameda Drive, turning northward, and 2) at the intersection it also drops south a short distance along 72nd Ave. SE and turns eastward continuing as Alameda Street just south of Alameda Drive. Alameda Street south of Alameda Drive is at a lower elevation than Alameda Drive. Where this portion of Alameda Street meets 72nd Ave. SE, there is a stop sign. There is also an incline from this stop sign when heading north along 72nd Ave. SE up to the intersection. At the intersection there is no stop sign. In addition, on Alameda Street/Alameda Drive, west of the intersection, there is a hill. The speed limit in the vicinity of the intersection is 50 mph.

¶ 3 A non-jury trial was held on September 24–25, 2012. Mr. Barstow testified he was very familiar with the intersection. On the day of the accident, he was driving eastbound on Alameda Street, west of the intersection and was responding to an emergency call. He claims he engaged his lights and siren upon receiving the emergency call. Mr. Barstow stated he knew his lights and siren were on because people had yielded to his vehicle; including a white car just east of the intersection. Mr. Barstow stated he had been traveling 70 mph but that when he approached the hill west of the intersection he took his foot off the gas pedal in order to slow down while cresting the hill. He claimed he was traveling 60 mph before the impact. Officer Scott Fennell, who was later at the scene of the accident, testified Mr. Barstow only told him he was traveling 70 mph and did not mention decelerating before the intersection. Officer Fennell also testified that in his opinion the damages to the vehicles were consistent with someone driving 70 mph.

¶ 4 Ms. Gowens was traveling westbound on Alameda Street below Alameda Drive and east of the intersection. She had her brother in her car and had just picked up her cousin. She was sixteen years of age and had recent-

---

1. Tr. of proceedings held Sept. 24–25, 2012, pg. 59, line 7; pg. 39, lines 22–23.

ly received a restricted Class D driver's license. Ms. Gowens testified she stopped at the stop sign at Alameda Street and 72nd Ave. SE, looked both ways, and did not see Mr. Barstow. Her position at the stop sign would be below the elevation of Alameda Street/Alameda Drive and would be facing westward toward the direction Mr. Barstow was traveling. She then drove north the short distance along 72nd Ave. SE to the intersection. She claims that even though there was no stop sign at the intersection she stopped anyway because she knew the intersection was dangerous. She stated she looked both ways, did not see Mr. Barstow, and then entered the intersection heading westbound on Alameda Street. She also claims she was in her westbound lane when the impact occurred. She never saw Mr. Barstow's vehicle nor heard his siren. Her two passengers also testified they never saw Mr. Barstow or heard his siren.

¶ 5 Mr. Barstow was traveling eastbound along Alameda Street/Alameda Drive. After he reached the top of the hill, just west of the intersection, he noticed a white car pulling over to the side of the road presumably to yield to his emergency vehicle. He testified that when he looked up from watching the white car, Ms. Gowens' vehicle was "right there entering the intersection." He stated he was unsure why he never saw her until she was in the intersection; he had no idea where she had come from. Mr. Barstow testified that he steered into her lane in order to hit the "front left corner" of her vehicle rather than the "driver's side door." He believed the accident was unavoidable and that there was no time to turn right and avoid hitting her vehicle. He also testified

that at the time of impact she had never made it all the way across his lane of travel.

¶ 6 In addition, Mr. Barstow testified from his position driving westward the road created an "optical illusion" especially when driving at night. He said Alameda Street appears to continue straight and not curve into Alameda Drive. When asked to review an exhibit of the intersection and surrounding area, he testified that the intersection created a sight problem where someone in his position would have difficulty seeing a vehicle stopped at the stop sign on Alameda Street and 72nd Ave. SE and vice versa. However, he did not think the intersection was dangerous. He had never responded to nor heard of an accident at the intersection.

¶ 7 At the close of the evidence, NRH moved for a directed verdict which the trial court overruled. The parties were instructed by the court to provide written closing arguments and findings of fact and conclusions of law. The trial court's Order was filed on March 8, 2013. In its Order, the trial court found as follows: 1) Mr. Barstow was an employee of NRH and was acting in that capacity when driving through the intersection, 2) Mr. Barstow was responding to a call for service and more likely than not had his lights and siren on while driving, 3) the fact that he most likely used his lights and sirens does not provide blanket protection under 47 O.S., 11–106 [2], 4) the unusual layout of the intersection required a heightened use of care by all, 5) in this situation Mr. Barstow's high rate of speed did endanger the life and property of Ms. Gowens, and 6) Mr. Barstow was a cause of the accident.

¶ 8 In addition, the trial court stated it relied on 47 O.S., 11–801 [3], and found that

2. The trial court wrote that 47 O.S. § 11–106 allows the driver to exceed the maximum speed limits so long as speeding does not endanger life or property.
Title 47 O.S.2011, § 11–106(B)(3) provides:
   B. The driver of an authorized emergency vehicle may:
   . . .
   3. Exceed the maximum speed limits so long as speeding does not endanger life or property;

3. The trial court quoted the following language presumably from 47 O.S., § 11–801:
   Any person driving a vehicle on a public road should drive at a reasonable speed considering

the conditions of the roadway, and no person should drive any faster than will permit the driver from stopping at a clear distance from dangers ahead.
The actual language of 47 O.S.2011, § 11–801(a) states:
   Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and any other conditions then existing. No person shall drive any vehicle upon a highway at a speed greater than will permit the driver to

649

under the circumstances, Mr. Barstow's use of speed through that intersection, given Ms. Gowens was approaching or in the intersection, was both "negligent and reckless." The trial court awarded Ms. Gowens total damages in the amount of $263,682.00, inclusive of $131,841.84 in medical expenses. The trial court found Ms. Gowens should have also used a heightened level of care in approaching and moving through the intersection and determined she was twenty percent (20%) at fault for the accident. The trial court further determined the "Defendant has not proven that it is of a lesser degree of fault that [sic] Ms. Gowens." In this Order the trial court did not find the GTCA to be applicable.

¶ 9 On March 22, 2013, NRH filed a Combined Motion for Judgment Notwithstanding the Verdict and Motion for New Trial. On October 7, 2013, the trial court issued a Modified Journal Entry denying NRH's motions with the exception of finding the GTCA was applicable to NRH. The trial court additionally reduced the damages for Ms. Gowens' comparative negligence first and then reduced the judgment to the applicable GTCA cap of $125,000.00. NRH filed its Petition in Error on November 5, 2013, appealing the March 8, 2013, Order and the October 7, 2013, denial of its post-trial motions. The case was assigned to the Oklahoma Court of Civil Appeals and in an unpublished opinion filed April 8, 2015, the Oklahoma Court of Civil Appeals determined the dispositive issue was whether it was legally possible for NRH to be liable for the reckless acts of its emergency vehicle operator. The appellate court found under current case law and the GTCA, NRH was immune and therefore reversed both of the trial court's orders. On April 21, 2015, Ms. Gowens filed a Petition for Writ of Certiorari which this Court granted on September 21, 2015, and the matter was assigned to this office.

## STANDARD OF REVIEW

¶ 10 There are several standards of review applicable to this matter. The trial court determined NRH, who is covered un-

bring it to a stop within the assured clear

der the GTCA, was liable for the reckless acts of its employee. The question of NRH's immunity under the GTCA is one of law and is reviewable *de novo*. *State ex rel. Oklahoma Department of Public Safety v. Gurich*, 2010 OK 56, ¶ 6, 238 P.3d 1; *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081.

¶ 11 In addition, there are standards of review concerning NRH's post-trial motions. In ruling on a motion for judgment notwithstanding the verdict, the trial judge considers all evidence favorable to the non-moving party and disregards all evidence favorable to the movant. *Ellison v. Campbell*, 2014 OK 15, ¶ 12, 326 P.3d 68. This Court applies the same standard on review of the trial court's decision. *Ellison*, 2014 OK 15 at ¶ 12, 326 P.3d 68. Such motion should not be granted unless there is an entire absence of proof on a material issue. *Franklin v. Toal*, 2000 OK 79, ¶ 13, 19 P.3d 834. Appellate review of a motion for a new trial where the trial judge presided at the trial, heard the testimony, observed the witnesses, and had full knowledge of the proceedings is one of abuse of discretion. *Ellison*, 2014 OK 15 at ¶ 11, 326 P.3d 68. An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling. *Fent v. Oklahoma Natural Gas Co.*, 2001 OK 35, ¶ 12, 27 P.3d 477. "An abused judicial discretion is manifested when discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence. It is discretion employed on untenable grounds or for untenable reasons, or a discretionary act which is manifestly unreasonable." *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, ¶ 20, 987 P.2d 1185.

## ANALYSIS

### I. THE DISPOSITIVE ISSUE ADDRESSED BY THE OKLAHOMA COURT OF CIVIL APPEALS

¶ 12 The GTCA is the exclusive remedy to recover against a governmental entity in tort. *Tuffy's, Inc. v. City of Okla-*

distance ahead.

*homa City,* 2009 OK 4, ¶ 7, 212 P.3d 1158; *Teeter v. City of Edmond,* 2004 OK 5, ¶ 21, 85 P.3d 817. Governmental immunity is waived under the GTCA subject only to specific limitations and exceptions. Title 51 O.S. 2011, 153. The doctrine of *respondeat superior* is applicable under the GTCA. *Tuffy's, Inc. v. City of Oklahoma City,* 2009 OK 4, ¶ 7, 212 P.3d 1158; *DeCorte v. Robinson,* 1998 OK 87, ¶ 12, 969 P.2d 358. Under this doctrine an employer is generally held liable for the willful acts of an employee acting within the scope of employment. *Bosh v. Cherokee County Bldg. Authority,* 2013 OK 9, ¶ 9, 305 P.3d 994. "Scope of employment" is defined in the GTCA as follows:

> [P]erformance by an employee acting **in good faith** within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud;

Title 51 O.S.2011, 152(12). (Emphasis added).

In *Nail v. City of Henryetta,* 1996 OK 12, ¶ 11, 911 P.2d 914, this Court determined that under the doctrine of *respondeat superior* one acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business.

¶ 13 In its Brief in Chief, NRH asserts the dispositive issue is whether the trial court erred as a matter of law by finding it was liable for an act of its employee that was made with reckless disregard for the safety of others. In the alternative, NRH asserts there was no competent evidence showing Barstow acted with reckless disregard. NRH argues acts of employees of a political subdivision done in reckless disregard for the safety of others are outside the scope of employment and if Mr. Barstow's actions were reckless then it is immune from *respondeat superior* liability. NRH contends it also had immunity for acts constituting mere negligence of its emergency vehicle drivers when

4. Title 47 O.S.2011, § 11–101 through § 11–905.

they are responding to an emergency call while using an audible signal and lights.

¶ 14 The Oklahoma Court of Civil Appeals held the combination of two opinions of this Court had the unintended effect of granting complete immunity to a GTCA entity from *respondeat superior* liability for its emergency vehicle drivers' torts based on ordinary negligence and reckless disregard. The two opinions cited are *Fehring v. State Ins. Fund,* 2001 OK 11, 19 P.3d 276 and *State ex rel. Oklahoma Dep't of Pub. Safety v. Gurich,* 2010 OK 56, 238 P.3d 1.

¶ 15 In *Fehring,* we held that a claim against the State Insurance Fund for refusing to pay benefits under a workers' compensation award in a timely manner could only succeed upon showing conduct that mandated a determination its employees were not acting in good faith. *Fehring,* 2001 OK 11 at ¶ 25, 19 P.3d 276. We determined such conduct would necessitate a finding that it was intentional, willful and malicious and therefore not within the scope of employment. *Id.* at ¶ 28. However, we also noted that even based on a standard of culpability of reckless conduct the same result would be obtained. *Id.* at ¶ 29. We held that "[a]cts performed with reckless disregard for an individual's rights also lack good faith and are outside the scope of employment under the provisions of the GTCA." *Id.*

¶ 16 In *Gurich,* we established the duty of care an emergency vehicle driver owes the public while operating pursuant to 47 O.S. 2011, § 11–106. This section of law provides certain exemptions from the Rules of the Road[4] to an emergency vehicle driver when responding to an emergency call. It provides in pertinent part:

> A. The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privilege set forth in this section, but subject to the conditions herein stated.

B. The driver of an authorized emergency vehicle may:

....

3. Exceed the maximum speed limits so long as speeding does not endanger life or property;

....

C. The exemptions herein granted to the driver of an authorized emergency vehicle shall apply only when the driver is properly and lawfully making use of an audible signal or of flashing red or blue lights or a combination of flashing red and blue lights....

....

E. The provisions of this section shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of reckless disregard for the safety of others.

Title 47 O.S.2011, 11–106.

We noted this section of law was part of a Model Uniform Vehicle Code and adopting jurisdictions differed on the meaning of subsection E. *Gurich*, 2010 OK 56 at ¶ 23, 238 P.3d 1. The question was whether the language created a negligence standard or did it create a higher standard of care. The problem stems from its language that the exemptions found in this section "shall not relieve the driver from the duty to drive with due regard for the safety of all persons," and the language "nor shall such provisions protect the driver from the consequences of reckless disregard for the safety of others." Some jurisdictions found the "reckless disregard" language to be surplusage but we were reluctant to do so under our jurisprudence. *Gurich*, 2010 OK 56 at ¶ 25, 238 P.3d 1. We held that subsection E established "reckless disregard" as the standard of care for evaluating whether the driver of an emergency vehicle breached the duty to "drive with due regard for the safety of all persons." *Id.* In addition, we determined that public policy demanded a standard higher than mere negligence for situations involving emergency vehicles. *Id.* at ¶ 26. This higher standard was found to be more consistent with the balancing of the benefit of the emergency

service with the risk to the public. *Id.* at ¶ 27.

¶ 17 The effect of these two decisions, *Fehring* and *Gurich*, led the Oklahoma Court of Civil Appeals to one conclusion: if an emergency vehicle driver must be found to have acted in "reckless disregard," not just merely negligently, in order to be liable in tort, and an employee acting in "reckless disregard" acts outside of their scope of employment, then an employer covered under the GTCA could never be liable for the torts of their emergency vehicle drivers committed while acting pursuant to 47 O.S.2011, § 11–106. Although the logic is understandable, we disagree.

¶ 18 In *Fehring*, the tort at issue required proof of an element that necessarily excluded good faith conduct. This was also true of the two cases discussed in *Fehring*; *Parker v. City of Midwest City*, 1993 OK 29, 850 P.2d 1065 and *McMullen v. City of Del City*, 1996 OK CIV APP 46, 920 P.2d 528. In *Parker* the cause of action was for malicious prosecution. We held Midwest City could not be liable for the actions of its police officer because the tort required a showing of malice which includes some degree of bad faith. *Parker*, 1993 OK 29 at ¶¶ 12–14, 850 P.2d 1065. In *McMullen* the plaintiff pleaded a claim for the intentional tort of outrage. The court noted the tort required extreme and outrageous conduct that went beyond all bounds of decency and there is no way to prove such claim if the defendants had acted in good faith. *McMullen* 1996 OK CIV APP 46 at ¶¶ 7–8, 920 P.2d 528. The viability of the torts in each of these cases was dependent on showing the defendants engaged in conduct that would be considered bad faith. These cases are distinguishable from the present case.

¶ 19 The trial court in the present matter found Mr. Barstow was "both negligent and reckless" due to the speed he traveled through this particular intersection. The trial court did not say "reckless disregard" in her order but we are convinced that could be the only meaning. It is clear from the trial transcript that the trial court was aware that in order to find NRH liable it must find Mr.

Barstow acted with "reckless disregard"; not mere negligence.[5]

¶ 20 The Oklahoma Uniform Jury Instruction 5.6 defines "reckless disregard" as follows:

The conduct of [Defendant] was in reckless disregard of another's rights if [Defendant] was either aware, or did not care, that there was a substantial and unnecessary risk that [his/her/its] conduct would cause serious injury to others. In order for the conduct to be in reckless disregard of another's rights, it must have been unreasonable under the circumstances, and also there must have been a high probability that the conduct would cause serious harm to another person.

OUJI (Civil) No. 5.6.

This instruction further provides that punitive damages may be awarded if the jury finds by clear and convincing evidence the defendant acted in reckless disregard or acted intentionally and with malice. The instruction defines "malice" as involving "either hatred, spite, or ill-will, or else the doing of a wrongful act intentionally without just cause or excuse." *Id.* Although both reckless disregard and intentional acts of malice may be the basis for a punitive damages award the OUJI instruction clearly distinguishes the two. Additionally, the two are distinguished in statute. The statute concerning punitive damages provides lesser damages for acts constituting reckless disregard than for acts constituting malice.[6]

¶ 21 It is apparent that "reckless disregard" is distinguishable from acts that clearly show malice or bad faith. Acts performed with "reckless disregard" do not automatically rise to a level constituting malice or bad faith. That is not to say that malice or bad faith can never be inferred from conduct exhibiting reckless disregard for the rights of others. Such determination, however-

er, shall be made on a case-by-case basis. *Fehring* is hereby overruled to the extent that its holding provides that acts performed with reckless disregard for an individual's rights automatically lack good faith in cases where the tort at issue does not require proof of an element that necessarily excludes good faith conduct or requires a showing of malice.

¶ 22 This case concerns an automobile accident. An element exhibiting bad faith or malice is not required. This is true even though Mr. Barstow's conduct was found to have been reckless. The trial court did not find that Mr. Barstow acted with malice or bad faith. The trial court's finding that he was acting within the scope of his employment is reasonable under the circumstances of this case. Mr. Barstow was a paramedic supervisor responding to an emergency call with lights flashing and siren activated. He is allowed by law to exceed the speed limit as long as it does not endanger life or property. Even though his act of speeding through this particular intersection was found to be reckless his actions leading up to the collision were naturally incident and in furtherance of his duties to his employer. There is no indication that his actions, although having been found unreasonable under the circumstances, were so extreme that they unlawfully usurped any power he did not rightfully possess as an emergency vehicle driver. *See DeCorte v. Robinson,* 1998 OK 87, ¶ 12, 969 P.2d 358. Therefore, we will not disturb the trial court's ruling that Mr. Barstow was acting within the scope of his employment.

## II. OTHER ISSUES RAISED AND NOT SPECIFICALLY ADDRESSED BY THE OKLAHOMA COURT OF CIVIL APPEALS

¶ 23 Pursuant to Rule 1.180 of the Rules of the Supreme Court, 12 O.S.2011, Ch. 15, App. 1, if the Oklahoma Court of Civil Appeals did not decide all of the properly preserved and

---

5. Tr. of the proceedings held Sept. 24–25, 2012:
  pg. 110, lines 4–5: Defendants' Attorney: "in order to find he was responsible for the accident, must find that he acted with reckless disregard."
  pg. 181, lines 3–5: Defendants' Attorney: "the evidence will not support a finding that even Barstow acted with reckless disregard, which is required in this case...."

pg. 197, lines 13–15: Defendants' Attorney: "whether you find them on reckless disregard or just negligence. All of that, I think, needs to be set forth somewhere."

6. Title 23 O.S.2011, § 9.1.

briefed issues, this Court may, should it vacate the opinion of the COCA, address such undecided matters or this Court may remand the cause to the COCA to address such issues. The Oklahoma Court of Civil Appeals opinion focused on one issue concerning the scope of employment which we have already addressed. Several other issues were briefed on appeal but not addressed by the appellate court. For the sake of expediency we will address such issues in this opinion.

## A. There Was Competent Evidence That Mr. Barstow Acted With Reckless Disregard For The Safety Of Others.

¶ 24 NRH asserts in the alternative, that Ms. Gowens offered no competent evidence at trial that Mr. Barstow acted with reckless disregard when responding to an emergency call and therefore the trial court erred in not granting its motion for judgment notwithstanding the verdict. The trial court found Mr. Barstow was reckless because of the speed in which he traveled through this particular intersection. The conflicting testimony at trial indicated he was driving somewhere between 10 to 20 miles per hour over the speed limit. NRH argues there was no competent evidence to show speed caused or contributed to the accident. Mr. Barstow testified he could not have avoided the accident even if he had been traveling at the speed limit of 50 miles per hour. Although Officer Fennell testified he believed the intersection was dangerous, he also stated he has driven through the intersection at 70 miles per hour and did not feel he was endangering life or property. No expert testimony was presented to show speed played a role in this accident. NRH also asserts to the contrary the evidence shows Ms. Gowens was the cause of the accident. It alleges the only explanation as to why she did not see Mr. Barstow was because she was not paying attention. Officer Fennell testified he believed Ms. Gowens should have been able to see Mr. Barstow when she left the stop sign on Alameda Street and was approaching the intersection. NRH also asserts she was negligent per se for violating several Rules of the Road including failure to yield the right-of-way to an emergency vehicle.[7]

¶ 25 Ms. Gowens asserts there were sufficient facts to support the trial court's finding that Mr. Barstow's actions were reckless. The fact that Mr. Barstow was speeding is not in dispute; the parties only dispute by how much. Nearly every witness testified that the intersection was dangerous. Mr. Barstow testified that he was very familiar with the intersection. He stated the intersection caused an optical illusion and he agreed that there were sight problems at both Ms. Gowens' position and his position. He also testified that he slowed down on the hill approaching the intersection because of a curve in the road.

¶ 26 In a non-jury trial the trial judge acts as the trier of fact and those findings are entitled to the same weight and consideration that would be given to a jury's verdict. *Hagen v. Independent School Dist. No. I–004*, 2007 OK 19, ¶ 7, 157 P.3d 738; *Sides v. John Cordes, Inc.*, 1999 OK 36, ¶ 16, 981 P.2d 301. The sufficiency of the evidence to sustain a judgment in an action of legal cognizance is determined by an appellate court in light of the evidence tending to support it, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts with it. *Florafax Int'l, Inc., v. GTE Market Resources, Inc.*, 1997 OK 7, ¶ 3, 933 P.2d 282. If there is any competent evidence tending to support the findings and judgment of the trial court at a bench trial of a law case, the findings and judgment will not be disturbed, even if the record might also support a conclusion different from that reached by the trial court. *Sides*, 1999 OK 36 at ¶ 16, 981 P.2d 301. The credibility of witnesses and the effect of and weight given to their testimony, as well as the resolution of conflicting or inconsistent testimony, are questions of fact to be determined by the trier. *Id.* It is not for this Court to weigh the evidence. *Ellison v. Campbell*, 2014 OK 15, ¶ 13, 326 P.3d 68. We have carefully re-

---

7. Title 47 O.S.2011, § 11–703(d). NRH also asserted she violated 47 O.S.2011, §§ 11–403, 11– 405 and 6–105.

viewed the record and hold the trial court's conclusion that Mr. Barstow's conduct was reckless because of his use of speed through this intersection is consistent with the reasonable inferences which may be drawn from the evidence as a whole. We will not disturb the trial court's judgment simply because the record might support a contrary conclusion.

### B. The Trial Court Did Not Abuse Its Discretion By Denying NRH's Motion For New Trial

¶ 27 NRH asserts the trial court's modified journal entry should be vacated and a new trial granted for any of the following causes.

### 1. NRH Asserts The Trial Court's Reliance On 47 O.S.2011, § 11–801 Was In Error.

¶ 28 NRH asserts the trial court erred by relying on 47 O.S.2011, § 11–801. This section provides in pertinent part:

A. Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and any other conditions then existing. No person shall drive any vehicle upon a highway at a speed greater than will permit the driver to bring it to a stop within the assured clear distance ahead.

. . . .

E. The driver of every vehicle shall, consistent with the requirements of subsection A of this section, drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hillcrest, when driving upon any narrow or winding roadway, and when special hazard exists with respect to pedestrians or other traffic, or by reason of weather or highway conditions. The Oklahoma Department of Transportation and the Oklahoma Turnpike Authority may post, by changeable message sign or other appropriate sign, a temporary reduced speed limit for maintenance operations or when special hazards with respect to pedestrians, other traffic,

an accident, by reason of weather or when other hazardous highway conditions exist. Title 47 O.S.2011, § 11–801.

In paragraph 6 of the trial court's March 8, 2013, Order the trial court found:

6) The Court relies upon 47 O.S § 11–801, in that "any person driving a vehicle on a public road should drive at a reasonable speed considering the conditions of the roadway, and no person should drive any faster than will permit the driver from stopping at a clear distance from dangers ahead." Given the circumstances, Mr. Barstow's use of the speed through that intersection, given that Ms. Gowens's vehicle was approaching or in the intersection was both negligent and reckless.

NRH asserts Mr. Barstow had no assured clear distance to stop because Ms. Gowens pulled out in front of him. Further, as long as he does not endanger life or property, he was allowed by law to drive in excess of the speed limit while responding to an emergency call while making lawful use of the lights and siren pursuant to 47 O.S.2011, § 11–106. NRH again argues there was no competent evidence that Mr. Barstow's speed caused or contributed to the accident and as a result the trial court applied 47 O.S.2011, § 11–801 contrary to law.

¶ 29 This argument is essentially another attack on the competency of the evidence. The trial court found Mr. Barstow violated 47 O.S.2011, § 11–801 based upon the facts of this case. It was not an abuse of discretion for the trial court to consider § 11–801 as part of the circumstances from which she found Mr. Barstow acted "negligently." The trial court also found he acted "recklessly" which is the standard used to find NRH liable for Mr. Barstow's actions under 47 O.S.2011, § 11–106. The finding of recklessness is what is material and as mentioned in the previous section of this opinion, the record is sufficient to support the trial court's conclusions.

### 2. NRH Asserts The Trial Court Failed To Apportion Liability.

¶ 30 NRH alleges the trial court erred by not apportioning any liability to the

City of Norman (City). In its Brief in Chief, NRH asserts the City was negligent in constructing and maintaining the intersection and it was either the direct cause of the accident or had some causal connection with it. NRH relies on the testimony of Officer Fennell who said the intersection was dangerous and he had made official complaints concerning it. He also testified that the intersection was eventually modified. NRH interprets his testimony to say the intersection was dangerous because of the way it was constructed. It appears from Officer Fennell's testimony, however, that he was referring to why part of Alameda was shut down after modifications and not to the dangerousness of the intersection based upon its construction.[8]

¶ 31 At trial, the possibility of City's negligence was mentioned only briefly. NRH's attorney asserted to the trial court that "[w]ell, you know, we allege third-party negligence, so that's another option that's available." [9] In its Brief in Chief, NRH cites as its sole authority, *Fuller v. Odom*, 1987 OK 64, 741 P.2d 449, wherein this Court determined a GTCA covered entity is liable only for that percentage of damages caused by its own negligence. In that case the GTCA covered entity was a party to the case. Here the City is not even a party to the case. We have previously held that the negligence of tort-feasors who are not parties to a lawsuit, "ghost tort-feasors," should be considered by the trier of fact in order to properly apportion the negligence of the parties. *Paul v. N.L. Industries, Inc.*, 1980 OK 127, ¶ 5, 624 P.2d 68, 70. However, NRH's brief makes no mention of or presents any authority concerning the applicability of "ghost tort-feasors" to this case.

¶ 32 Regardless, there was no evidence presented to support the assertion that the City was negligent in its construction or maintenance of the intersection. In *Walker v. City of Moore*, 1992 OK 73, ¶ 12, 837 P.2d 876, we held the layout of a street is a discretionary act exempted under the GTCA.[10] However, we also determined once created the negligent maintenance of the street was not exempted. *Walker*, 1992 OK 73 at ¶ 12, 837 P.2d 876; *see also, Smith ex rel. Smith v. City of Oklahoma City*, 2013 OK CIV APP 34, 299 P.3d 519. Here the dangerousness of the intersection as described by the witnesses concerns the layout of the intersection and not its maintenance. The testimony alone concerning the dangerousness of the intersection without proof of negligence on part of the City did not persuade the trial court to apportion liability. We do not find any error in the trial court's decision not to apportion liability to the City.

### 3. NRH Asserts The Trial Court Erred In Calculating Damages.

¶ 33 The trial court found Ms. Gowens' total damages to be $263,682.00 which included $131,841.84 in medical expenses. Ms. Gowens was also found to be 20% contributorily negligent. In its Modified Journal Entry the trial court reduced judgment to the $125,000.00 GTCA cap. NRH asserted it had made $46,382.88 in Medicaid write-offs that should be credited against the $125,000.00 cap. It asserted such write-offs are not subject to the collateral source rule [11] and should be considered payments made by a tort-feasor to the injured party.[12]

¶ 34 The parties do not cite any decisions of this Court concerning whether or not

---

8. Tr. of proceedings held Sept. 24–25, 2012, pg. 59, lines 12–23.

   Q. Okay. And had you—had—is this a—is this what you—what would you describe this as? Is this a dangerous intersection?
   A. Yes.
   Q. Okay. Tell the Court about any complaints you had made prior to this crash about this intersection.
   A. Well, I had made official complaints, but it had been noted before by—even by several other people that—until eventually they shut down the one part of Alameda. As it is now, Alameda Street is shut down at 72nd. That is largely because of the way the intersection was constructed.

9. Tr. of proceedings held Sept. 24–25, 2012, pg. 197, lines 21–23.

10. Title 51 O.S.2011, § 155(5).

11. Payments made to the injured party from other sources are not credited against the tort-feasor's liability. *Handy v. City of Lawton*, 1992 OK 111, ¶ 17, 835 P.2d 870.

12. In *Overturff v. Hart*, 1975 OK 13, 531 P.2d 1035, this Court held that payments made by a defendant to a plaintiff before trial could be used to reduce the judgment if the money came from the defendant's independent fund. *See Handy*, 1992 OK 111 at ¶ 17, 835 P.2d 870.

Medicaid write-offs are considered a collateral source. Ms. Gowens' attorneys point out that some other jurisdictions [13] treat Medicaid write-offs as a collateral source. It was further pointed out that after this case was commenced, changes to Oklahoma law (12 O.S.2011, § 3009.1) allow only actual amounts paid for any doctor bills to be admissible at trial.[14] However, we need not decide today whether Medicaid write-offs made in cases filed prior to 12 O.S.2011, § 3009.1 are a collateral source. The dispositive issue is from what source would such write-offs be credited; NRH's portion of the total damages or the GTCA cap.

¶35 In *Thomas v. City of Tulsa*, 1988 OK 138, 766 P.2d 339, Thomas sued the City of Tulsa (Tulsa) for injuries she sustained from actions of Tulsa's employees. The jury returned a verdict in favor of Thomas and awarded her damages. It determined the total damages to be in the amount of $60,000.00 and found Tulsa was 60% contributorily negligent. Tulsa moved to have its contributory negligence calculated on the GTCA cap rather than total damages. The GTCA cap at the time of this case was $50,000.00. Tulsa argued its damages should be $30,000.00 which is 60% of the $50,000.00 cap rather than $36,000.00 which is 60% of the $60,000.00 total damages. The trial court overruled Tulsa's motion and Tulsa appealed. The Oklahoma Court of Civil Appeals agreed with Tulsa and reversed the trial court's order. On certiorari we vacated the appellate court's decision and affirmed the trial court. We determined that there was nothing in the GTCA from which we can infer, in a contributory negligence case, that plaintiff's recovery is limited to only a percentage of the cap. We held plaintiff is entitled to recover a percentage of total recovery up to the then-applicable statutory cap of $50,000.00.

¶36 In the present case, if we were to deduct the $46,382.88 from the damages attributed to NRH the amount would still exceed the $125,000.00 GTCA cap. Pursuant to *Thomas*, there would be no reduction in damages from the cap and the damages would therefore be equal to $125,000.00. We do not find the trial court made any error in its calculation.

### 4. NRH Asserts An Irregularity In The Proceedings Prevented It From Having A Fair Trial.

■ ¶37 The last issue concerns the proper time to object to perceived judicial

13. *Haselden v. Davis*, 353 S.C. 481, 579 S.E.2d 293, 294 n. 3 (2003); *Wills v. Foster*, 229 Ill.2d 393, 323 Ill.Dec. 26, 892 N.E.2d 1018 (2008).

14. Title 12 O.S.2011, § 3009.1. This section was originally enacted in 2011, several years after the commencement of the present case (Nov. 5, 2008), and provides that it only applies to civil cases filed on or after November 1, 2011. Its full text is as follows:

A. Upon the trial of any civil case involving personal injury, the actual amounts paid for any doctor bills, hospital bills, ambulance service bills, drug bills and similar bills for expenses incurred in the treatment of the party shall be the amounts admissible at trial, not the amounts billed for expenses incurred in the treatment of the party. If, in addition to evidence of payment, a signed statement acknowledged by the medical provider or an authorized representative that the provider in consideration of the patient's efforts to collect the funds to pay the provider, will accept the amount paid as full payment of the obligations is also admitted. The statement shall be part of the record as an exhibit but need not be shown to the jury. Provided, if a medical provider has filed a lien in the case for an amount in excess of the amount paid, then bills in excess of the amount paid but not more than the amount of the lien shall be admissible. If no payment has been made, the Medicare reimbursement rates in effect when the personal injury occurred shall be admissible if, in addition to evidence of nonpayment, a signed statement acknowledged by the medical provider or an authorized representative that the provider, in consideration of the patient's efforts to collect the funds to pay the provider, will accept payment at the Medicare reimbursement rate less cost of recovery as provided in Medicare regulations as full payment of the obligation is also admitted. The statement shall be part of the record as an exhibit but need not be shown to the jury. Provided, if a medical provider has filed a lien in the case for an amount in excess of the Medicare rate, then bills in excess of the amount of the Medicare rate but not more than the amount of the lien shall be admissible.
B. This section shall apply to civil cases involving personal injury filed on or after November 1, 2011.
Title 12 O.S.2011, § 3009.1; 2011 Okla. Sess. Laws c. 198, § 1.

bias discovered during the course of a trial. Although for purposes of Rule 1.180 of the Rules of the Supreme Court, 12 O.S.2011, Ch. 15, App. 1, we may address only issues properly preserved for appeal, the issue here concerns whether or not this issue has been properly preserved for appeal and it does not appear to have been previously addressed by this Court.

¶ 38 NRH asserts it is entitled to a new trial because there were irregularities in the proceedings.[15]   NRH contends it was prevented from having a fair trial due to the judge's perceived bias and strong feelings about this intersection.   On the first day of the two day trial the judge stated "[b]oy that is an evil intersection.   I prosecuted a negligent homicide at that intersection years and years and years ago."[16]   NRH argues it would not have agreed to a bench trial had it known of the judge's predetermined opinion of this intersection.   Ms. Gowens argues NRH never objected to the judge's comments at trial and instead waited until a verdict was handed down nearly 5 months later to object in their motion for new trial. She asserts NRH waived its objection because it did not raise it at trial.   NRH counters that it properly preserved the issue for

appeal by asserting it in its motion for new trial.

¶ 39 Both parties cite an Oklahoma Court of Criminal Appeals opinion as persuasive authority.   In *C.R.B. v. State,* the court held that parties to a case are entitled to a hearing before an impartial judge and when bias exists the general means to secure relief is through a writ of mandamus compelling a judge to disqualify.   1978 OK CR 22, ¶ 2, 575 P.2d 636.   The court said, however, this approach can be impossible if judicial bias only becomes apparent at the hearing and in which case the proper action is to object and move for a mistrial.   *C.R.B.,* 1978 OK CR 22 at ¶ 2, 575 P.2d 636. If the motion is denied then the error is preserved for appeal.   *Id.* Ms. Gowens asserts *C.R.B.* requires one to object and move for a mistrial during the trial and not in a later post-trial motion. NRH asserts *C.R.B.* does not positively require the objection be made at trial.

¶ 40 We note other jurisdictions require a claim of judicial bias be raised in the trial court or else the issue is not preserved.[17] Our jurisprudence has clearly found it necessary to make an objection at trial in order to preserve an issue for appeal when asserting other grounds for granting a new trial.[18]

**15.**   Title 12 O.S.2011, § 651 provides in pertinent part:

> A new trial is a reexamination in the same court, of an issue of fact or of law or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the court. The former verdict, report, or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of the party:
> 1.   Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which the party was prevented from having a fair trial;
> . . . .

**16.**   Tr. of proceedings held Sept. 24–25, 2012, pg. 58, lines 2–4.

**17.**   *People v. Jackson,* 292 Mich.App. 583, 808 N.W.2d 541, 552 (2011).

**18.**   Title 12 O.S.2011, § 651, upon application, requires a court to grant a new trial when any of the following causes materially affect the substantial rights of the moving party:

1.   Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which the party was prevented from having a fair trial;
2.   Misconduct of the jury or a prevailing party;
3.   Accident or surprise, which ordinary prudence could not have guarded against;
4.   Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
5.   Error in the assessment of the amount of recovery, whether too large or too small, where the action is upon a contract, or for the injury or detention of property;
6.   That the verdict, report, or decision is not sustained by sufficient evidence, or is contrary to law;
7.   Newly discovered evidence, material for the party applying, which could not, with reasonable diligence, have been discovered and produced at the trial;
8.   Error of law occurring at the trial, and objected to by the party making the application; or
9.   When, without fault of the complaining party, it becomes impossible to prepare a record for an appeal.

**658**

This Court has previously set the rule for objecting to juror bias and misconduct. In *Harris v. Boggess*, 1927 OK 80, 255 P. 685, plaintiff appealed the trial court's decision overruling his motion for new trial which had been based on alleged juror bias during the progress of the trial. Defendant asserted plaintiff knew of the juror's statements against him prior to the close of the trial and should have brought it to the attention of the trial court. *Harris*, 1927 OK 80 at ¶ 9, 124 Okla. 251, 255 P. 685. Defendant insisted the plaintiff should not be allowed after knowledge of bias to remain silent and speculate on the verdict of the jury and after an adverse verdict raise the objection in a motion for new trial. *Id.* Because the motion for new trial was ultimately decided in favor of defendant this Court did not disturb it. *Id.* However, a rule was set in this Court's syllabus stating if alleged misconduct of a juror is discovered prior to the close of the trial it is the duty of the complaining party to call it to the attention of the trial court by proper motion; if it is discovered after the close of the trial then it is appropriate to present the claim in a motion for new trial.[19]

¶ 41 We have held similarly when dealing with alleged misconduct of counsel. In *Burns v. Atchison, T. & S.F. Ry. Co.*, 1962 OK 91, 372 P.2d 36, plaintiff's counsel alleged misconduct of the prevailing party in a motion for new trial. The misconduct stemmed from defendant's closing statements. We noted the plaintiff did not ask the court to declare a mistrial. *Burns*, 1962 OK 91 at ¶ 7, 372 P.2d 36. In this Court's syllabus we determined the following:

> Prejudicial remarks of counsel in argument to the jury are not ordinarily available as a ground for reversal unless objected to and exception taken at the time such remarks are made, and the remarks, as well as the objection and exception thereto, must be shown in the record of the proceedings of the trial. The objection is too late if made for the first time in motion for new trial.

*Burns*, 1962 OK 91 at ¶ 0, 372 P.2d 36 (syllabus).

¶ 42 A party who fails to preserve an issue for appeal by objecting in a timely manner to testimony or issues before the trial court, or to instructions given, or by neglecting to offer a proper instruction has waived review of that issue in the appellate courts. *Bane v. Anderson, Bryant & Co.*, 1989 OK 140, ¶ 24, 786 P.2d 1230. No argument has been presented to this Court indicating why an objection to judicial bias discovered at trial should be treated differently from any other objection. We see no reason to treat it so. NRH was aware of the comments on the first day of a two day trial and should have timely objected and moved for a mistrial rather than wait to assert bias for the first time in a motion for new trial.

### CONCLUSION

¶ 43 We hold for purposes of the GTCA, acts performed with reckless disregard do not automatically indicate a tort-feasor was acting in bad faith and hereby overrule that particular holding in *Fehring v. State Ins. Fund*, 2001 OK 11, 19 P.3d 276. We further hold there was competent evidence to support the trial court's order and it was not an abuse of discretion for the trial court to deny NRH's motion for new trial.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; JUDGEMENT OF THE TRIAL COURT AFFIRMED.**

¶ 44 COMBS, V.C.J., KAUGER, WATT, EDMONDSON, COLBERT, and GURICH, JJ., concur.

¶ 45 REIF, C.J. and WINCHESTER, J., concur in result.

¶ 46 TAYLOR, J., dissents.

---

19. In *Wagner v. McKernan*, 1947 OK 120, ¶ 19, 177 P.2d 511, this Court cited *Harris* as being the rule for waiver of a claim arising from misconduct. In that case we determined the plaintiff had waived his claim concerning misconduct caused by the defendant who spoke to a juror while the case was being tried. We held "[i]f the matters complained of were prejudicial, they should have been presented at the time." *Id.*