OSCN Found Document:IN THE MARRIAGE OF: SKOCH v. SKOCH

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MARRIAGE OF: SKOCH v. SKOCH
2025 OK CIV APP 33
Case Number: 121561
Decided: 03/31/2025
Mandate Issued: 10/15/2025
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2025 OK CIV APP 33, __ P.3d __

 

IN RE THE MARRIAGE OF:

KAMBERLY D. SKOCH, Petitioner/Appellee,
vs.
CLAY R. SKOCH, Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE JAMES M. SIDERIAS, TRIAL JUDGE

AFFIRMED

William E. Liebel
James T. Gorton
LAW OFFICES OF
WILLIAM E. LIEBEL
Oklahoma City, Oklahoma For Petitioner/Appellee

Christopher D. Smith
Sarah D. Willey
Tommy J. Pfeil
THE SMITH FIRM
Oklahoma City, Oklahoma For Respondent/Appellant

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 In this dissolution of marriage proceeding, Respondent Clay R. Skoch (Father) appeals from the trial court's Journal Entry of Decree of Dissolution of Marriage (Decree) in which, among other matters, the court made a finding of domestic violence by Father against Petitioner Kamberly D. Skoch (Mother) and their minor children, awarded sole custody to Mother, and adopted Mother's sole custody and visitation plan. Father also appeals from the trial court's Order awarding attorney fees and costs to Mother pursuant to 43 O.S. 2021 § 112.6

BACKGROUND

¶2 On March 21, 2022, Mother filed a Petition for Dissolution of Marriage against Father on the grounds of incompatibility in which, among other things, she sought joint custody of the parties' three minor children -- then aged 7, 5, and 3 -- "naming her as primary joint custodial parent with final decision making" authority and alleging such an award would be in the best interests of the minor children. Mother attached her requested Joint Custody Plan to the petition in which she also outlined her proposed visitation schedule for Father that requested, among other visitation, an every other weekend visitation schedule for Father. She also filed an Automatic Temporary Injunction Notice pursuant to 43 O.S. § 110

¶3 Father filed his response and counterapplication for temporary order in which, pertinent to this appeal, he attached his Proposed Joint Custody Plan which he alleged "significantly comports with that proposed by [Mother] with the specific exception of the following:

a. No primary designation is made.

b. No final decision-making authority is granted to either party.

c. The parties are each awarded equal time with the minor children in accordance with 43 O.S. § 111.1

He also filed an Answer in which he specifically denied Mother's allegation that naming her primary custodian and giving her final decision-making authority was in the children's best interest, and alleged in his Counter-Petition for Dissolution of Marriage that joint custody as outlined in his Proposed Joint Custody Plan was in the children's best interest.

¶4 A Temporary Order hearing was held over two days on April 28, 2022, and June 3, 2022, during which the then trial judge received evidence by transcript about the content of several audio recordings that were offered into evidence. Mother's counsel argued that as to the children's best interest the reason for her request for primary physical custody, final decision-making authority, and non-equal time share visitation for Father was based on 43 O.S. § 109

¶5 On January 25, 2023, the court appointed a Guardian ad Litem (GAL) charged with advocating on behalf of the children and investigating all matters concerning the best interests of the children. After conducting interviews of the parents, children, and others, and reviewing various documents and the audio recordings, the GAL sent a preliminary statement via email to both parties' counsel on March 9, 2023, and emailed the GAL's "First Confidential Report" to the attorneys for the parties on June 6, 2023. In both reports the GAL identified domestic violence by Father against Mother and recommended the trial court make a finding of domestic abuse.

¶6 A two-day trial was held on June 26 and 27, 2023, during which the trial court heard testimony from Mother, Father, and the GAL and received various evidentiary materials, including text messages between Mother and Father and flash drives of the audio recordings. The transcript of the court's ruling is dated June 27, 2023. The Decree was filed August 4, 2023. Among other matters, the court awarded Mother sole custody, awarded Father standard visitation, and found domestic violence has been shown. The court made various findings of fact including that "domestic violence has been shown here by preponderance of the evidence," that "there is intentional infliction of emotional distress that led to this marriage dissolution," and that "there were threats of anticipated fear to come, and it created an environment in the home that stifled any kind of growth or development."

¶7 Mother filed a motion for attorney fees and costs on August 17, 2023, in which she sought fees and costs pursuant to 43 O.S. § 112.6Hubert v. Hubert, 2023 OK CIV APP 40540 P.3d 1103See [§ 112.6]." He argued "the mandatory fee provision of [§ 112.6] should only apply to those fees which are incurred following notice of a litigant's intent to pursue such a claim." He argued that if a mandatory fee is awarded in this case, the "award in this case [should] be limited to those fees incurred by [Mother] after having made the request for a domestic violence finding by the Court, which would include those fees incurred following [Mother's] opening statement at trial." He argued the attorney fees award should, therefore, be limited to the two days of trial. Father argued Mother's failure to plead domestic violence failed to comply with Oklahoma's pleading code and violated his due process right to notice; thus, he did not have adequate opportunity to prepare a defense. He asserted, "[he] failed to receive adequate notice of any claim for mandatory fees and costs; thereby, depriving [him] of the opportunity to prepare a meaningful defense." 

¶8 On October 4, 2023, the court issued its Order awarding attorney fees to Mother pursuant to § 112.6. The court found that it had made a determination in the Decree that Mother "was a victim of domestic violence, consistent with its findings of fact in light of [43 O.S. § 10943 O.S. § 112.6shall be entitled to reasonable attorney fees and costs after the filing of a petition, upon application and a showing by a preponderance of evidence that the party is [the victim of domestic abuse]." shall order that the attorney fees and costs of the victimized party for the proceeding be substantially paid for by the abusing party prior to and after the entry of the final order." 

¶9 The trial court's Order also stated that the predecessor judge who presided over the temporary hearing proceedings described Father's "comments to his family as 'vile,' 'absolutely unforgivable,' ['traumatizing'], 'horrible,' and 'appalling' vitriol towards [Mother] in front of the children," citing to the Transcript of Ruling of the Court, June 3, 2022, State ex rel. Burk v. City of Oklahoma City, 1979 OK 115598 P.2d 659

¶10 Father appeals from the Decree and the Order.

STANDARD OF REVIEW

¶11 Father raises an issue of statutory construction. "Issues of statutory construction present questions of law, which we review de novo. Appellate courts have plenary, independent and non-deferential authority to determine whether the trial court erred in its legal rulings." Rickard v. Coulimore, 2022 OK 9505 P.3d 920

¶12 To the extent Father argues insufficiency of the evidence in support of the trial court's finding that domestic violence occurred in this case, we review the court's Decree for an abuse of discretion. "An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." Gowens v. Barstow, 2015 OK 85364 P.3d 644Id. (citation omitted).

¶13 Father also raises a question about Mother's entitlement to an award of attorney fees and costs pursuant to 43 O.S. 2021 § 112.6State ex rel. Dep't of Transp. v. Cedars Grp., L.L.C., 2017 OK 12393 P.3d 1095

ANALYSIS

I. Whether the trial court erred in finding there was sufficient evidence that 
Father had committed "domestic abuse."

¶14 In his first proposition of error, Father argues that the term "domestic abuse" in 43 O.S. § 112.622 O.S. § 60.143 O.S. § 112.6

¶15 Father relies on Duke v. Duke, 2020 OK 6457 P.3d 107322 O.S. § 60.1

¶16 Father's argument raises a question of statutory construction because it rests on a perceived ambiguity in the term "domestic abuse" as used in § 112.6. 

The fundamental purpose of statutory construction is to ascertain and give effect to the intent of the Legislature. To do this, we first look to the language of the statute. If the statutory language is clear and unambiguous, this Court must apply the plain and ordinary meaning of the words.

Rickard, 2022 OK 9Naylor v. Petuskey, 1992 OK 88834 P.2d 439Id., 834 P.3d at 441; Thurston v. State Farm Mut. Auto. Ins. Co., 2020 OK 105478 P.3d 415Rickard, ¶ 5, 505 P.3d at 923 (citation omitted).

¶17 We do not agree an ambiguity is present in the term "domestic abuse" as used in § 112.6. As discussed in Duke, § 112.2 specifically states the definition of domestic abuse "has the same meaning as such term is defined" in 22 O.S. § 60.1

¶18 This connection between domestic violence and domestic abuse is also seen in the dictionary definitions given to the terms domestic abuse and domestic violence. While we have discovered no definition for domestic abuse or domestic violence in standard print dictionaries, domestic violence is defined online in Merriam Webster's Dictionary as follows: "violent or abusive behavior directed by one family or household member against another." 

¶19 The following, however, appears in Black's Law Dictionary (12th ed. 2024) as the entry for "domestic abuse": "Preface to the Twelfth Edition | Guide to the Dictionary | Legal Maxims | Bibliography of Books Cited[.] domestic abuse See domestic violence (1) under VIOLENCE." Under the entry for "VIOLENCE," is the following:

domestic violence (1891) 1. Violence between members of a household or between romantic or sexual partners; the infliction of physical injury, or the creation of a reasonable fear of such an infliction, against a member of a household either by a parent or by a present or former member of the household. .The term refers esp. to violence between spouses or sexual partners (esp. cohabiting ones), but it can refer to other types of violence in a domestic setting, such as intentional child abuse committed by a member of the child's family. . . . Also termed domestic abuse; family abuse; family violence; domestic and family violence (DFV); . . . (when committed by one spouse against the other) spousal abuse. . . . Cf. . . . child abuse under ABUSE, n.; spousal abuse under ABUSE, n[.]

Under the entry for "ABUSE," is the following:

abuse . . . 1. To damage (a thing). 2. To depart from legal or reasonable use in dealing with (a person or thing); to misuse. 3. To injure (a person) physically or mentally. 4. In the context of child welfare, to hurt or injure (a child) by maltreatment. . In most states, a finding of abuse is generally limited to maltreatment that causes or threatens to cause lasting harm to the child. Cf. MALTREAT; MISTREAT.

Thus, the ordinary meaning of domestic abuse is defined as behavior -- both physical and mental -- and is equated to domestic violence.

¶20 The term "domestic abuse," is associated with the term "domestic violence" in § 112.6 both in the text of the statute and in its title. As previously stated herein, domestic violence is defined in 43 O.S. 2021 § 109(I)(2)(a), in part, to mean "the threat of the infliction of physical injury, any act of physical harm or the creation of a reasonable fear thereof" but does not require a threat of imminent physical harm. Domestic violence also includes mental or emotional harm through the "intentional infliction of emotional distress by a parent . . . against the child or another member of the household, including coercive control by a parent involving physical, sexual, psychological, emotional, economic or financial abuse[.]" Given the evident legislative scheme among the various statutes, of which § 112.6 is but one, to provide for the best interest of the child or children in custody or visitation cases, we conclude the more expansive meaning of domestic abuse given by the § 109(I)(2)(a) definition of domestic violence effectuates the Legislature's intent in the absence of an expressed contrary intent, like that expressed in § 112.2.

¶21 The trial court's comprehensive Decree sets forth the evidentiary findings for its determination that Father engaged in behavior constituting domestic violence. As stated by the court in its Decree and based on our review of the record on appeal, the audio recordings, the text messages introduced by Mother at trial, the trial testimony of both Mother and Father, and the GAL's written report and trial testimony all support the court's findings in the Decree that Father engaged in a pattern of behavior "used to establish power and control" and "can also involve emotional abuse, intimidation, manipulation, threats, all with the aim of maintaining dominance and instilling fear which is exactly what [Father] did in this case." Father does not dispute the evidentiary findings made by the trial court or that they are sufficient to show domestic violence occurred in this case. Rather, he argues the trial court erred because its findings support domestic violence, not domestic abuse as defined by 22 O.S. § 60.1

¶22 We thus conclude the trial court did not abuse its discretion in finding that Father engaged in domestic violence.

II. Whether domestic abuse must be pled to obtain a 
mandatory attorney fee award pursuant to . 

¶23 Father's second proposition of error asserts the trial court erred in considering issues that were not pled; specifically, the court erred in considering domestic abuse because "[d]omestic abuse was never pled by [Mother], nor was a pleading for sole custody made by [Mother] prior to her Pretrial Conference Memorandum." Id. He further relies, in part, on federal case law which explains the pleading standards of Federal Rules of Civil Procedure Rule 8(a)(2) upon which the Oklahoma Pleading Code is modeled. Notice and an opportunity to prepare a meaningful defense underlie Father's argument. Relying on Oklahoma case law, he further argues that if an issue is not pled, any judgment rendered outside the issues presented for adjudication is a nullity and void as to those issues.

¶24 However, significant to this argument is the stipulation Father made at trial concerning custody and visitation. Father agreed with the court "that regardless of what has been pled by the parties, that if the Court finds that it is not in the best interests of these children that . . . the parents should receive joint custody due to whatever reason, domestic violence, inability to work with one another, et cetera," the court may award sole custody to one parent. In his counsel's opening argument, however, Father argued that pursuant to Broadbent v. Broadbent, 2019 OK CIV APP 61451 P.3d 93043 O.S. § 112.6

THE COURT: And I understand. Your objection is that the Court lacks authority to make a finding of domestic violence under 112.6. But I also think that that might be a premature objection because 112.6 contemplates that the Court has heard the evidence and that later the counsel, in this case [Mother's counsel], would file an application pursuant to 112.6 if the Court were to make a finding of domestic violence.

I disagree that in order for the Court to find that here has been domestic violence that that must be specifically pled.

[FATHER'S COUNSEL]: Well, Your Honor, and I appreciate that. The reason it is so relevant is that if [Father] were to stipulate to [Mother] having sole custody in this case and stipulating to the visitation schedule that was included in [Mother's] pretrial conference statement, which [Mother](sic) essentially has done by his stipulation on Friday [in his June 23, 2023 Notice of Stipulation], 

If he gets -- if I were to say right now [Father] will stipulate to [Mother] receiving sole custody, then the only issues before this Court at that stage relating to kids, if [Mother] is going to go down that road, would be an issue of whether domestic violence has occurred. And for that reason, I believe it is a substantive issue that should be pled. Because if he were to stipulate to everything that has been included in [Mother's] pretrial conference statement -- which, Your Honor, for the record, I'll just say right now [Father] will stipulate to everything requested in [Mother's] pretrial conference statement. Sole custody, visitation schedule that they have requested, everything relating to the children, [Father] will stipulate to their pretrial conference statement.

And under that scenario, everything relevant to the children [except child support amounts] should be moot.

Agreeing with the court that Mother was not obligated to be bound by Father's stipulation, Father's counsel argued:

I understand that. I understand that. But, also, if that were the case, the substantive question in this case becomes, well, what's the issue? And if the only thing at issue is a question of whether domestic violence occurred, then that is a substantive question we're going to trial on. And I don't think we can do that, Your honor.

. . . .

And so we're asking for [Mother's] pretrial conference statement to be entered. We can hear testimony on child support if we need to, but that would release the [GAL]. That would expedite this case, and that would eliminate any issues before this Court relating to the children. And I think it puts the issue of domestic violence to bed as well.

But I would -- I do think there is domestic violence issues relating to -- I don't argue. You can always raise the issue of domestic violence in a case. You can present it if it's relevant to the issues at hand. But in this case, we're not arguing over custody. We're not arguing over a visitation schedule. We're not arguing over the request for counseling.

So the question would be why is it germane? And it would only be germane if the objective was to reapportion assets between [Father] and [Mother] in the form of an attorney's fee award. And that was not pled. And so from that perspective, I do ask that we expedite this thing.

¶25 Father's arguments are unpersuasive. The parties may not agree to circumvent the trial court's authority and duty to make a custody and visitation determination and, in so doing, determine the best interest of the children. Title 43 O.S. 2021 & Supp. 2024 § 109 provides, in part, as follows:

A. In awarding the custody of a minor unmarried child[,] . . . the court shall consider what appears to be in the best interests of the physical and mental and moral welfare of the child.

B. The court, pursuant to the provisions of subsection A of this section, may grant the care, custody, and control of a child to either parent or to the parents jointly.

(Emphasis added.) That Father now stipulates to what Mother has requested does not mean the court must place sole custody with Mother or award the standard visitation she requested for Father.

¶26 As previously discussed, 42 O.S. 2021 § 109(I)(1) provides that, "[i]n every proceeding in which there is a dispute as to the custody of a minor child," 

¶27 Again, Father's argument is unpersuasive because it overlooks the requirement placed on the court pursuant to § 109.3 which does not contain limiting language and specifically provides:

In every case involving the custody of, guardianship of or visitation with a child, the court shall consider evidence of domestic abuse, stalking and/or harassing behavior properly brought before it. If the occurrence of domestic abuse, stalking or harassing behavior is established by a preponderance of the evidence, there shall be a rebuttable presumption that it is not in the best interest of the child to have custody, guardianship, or unsupervised visitation granted to the person against whom domestic abuse, stalking or harassing behavior has been established.

(Emphasis added.) Father appears to advocate that a restricted meaning of the words "evidence of . . . behavior properly brought before it" in § 109.3 is required by the Oklahoma Pleading Code. That is, he argues that the only evidence of behavior properly before the court at trial is evidence pertaining to that which was pled. 

¶28 Father's argument also rests on his contention that 43 O.S. § 112.6Hubert v. Hubert, 2023 OK CIV APP 40540 P.3d 1103Hubert creates a substantive issue which should be pled prior to such a request being made." Thus, he concludes, "[i]f it is not pled, it cannot be ordered as it goes beyond the issues properly presented." Although Father appears in this appeal to base his argument on Hubert, we disagree Hubert supports the theory

Father advances. 

¶29 In Hubert, the "sole issue on appeal" involved the trial court's attorney fee award that considered multiple attorney fee statutes, some mandatory and some discretionary. 2023 OK CIV APP 40Hubert Court determined the trial court erred in applying equitable considerations -- including the means of the parties -- in making its award where specific mandatory statutes -- § 112.6 being one of them -- required the award of fees if certain requisite findings were made. As to § 112.6, the Hubert Court stated:

Three of the statutes [upon which the father relied in seeking attorney fees] make clear that the trial court is required to award attorney fees if certain conditions are met. Title 43 O.S. 2021 § 112.6

2023 OK CIV APP 4043 O.S. § 107.3Hubert, ¶ 24, 540 P.3d at 1110. No mention is made of a pleading requirement. 

¶30 Further, nothing in § 112.6 requires that the victim of domestic violence plead domestic abuse or domestic violence in the dissolution of marriage or custody petition or an amendment to that pleading; rather, it requires that party to file an application and show by a preponderance of evidence that he or she is the victim of domestic abuse, and requires the court to award the victimized party his or her attorney fees for that dissolution of marriage or child custody proceeding. Thus, even if the trial court makes a finding of domestic violence, that finding does not alone trigger an award of fees. The victimized party must do something to be awarded fees under § 112.6; the party must file an application and make the requisite evidentiary showing. Therefore, despite Father's stipulations, the issue of domestic violence is not "moot." Evidence must be presented to the court that supports any domestic violence determination it may make regarding the best interests of the children and any attorney fee application that subsequently may be made by the victimized party.

¶31 In the present case, evidence of Father's behavior of domestic violence was properly before the court prior to trial and, thus, the court did not err as a matter of law or abuse its discretion in hearing evidence of such behavior at trial regardless of Father's stipulation and Mother's purported failure to plead domestic violence in her petition. 

III. Whether Father's due process right to notice was violated 
by Mother's failure to amend her pleadings. 

¶32 In his third proposition of error Father argues his due process rights were violated because Mother "substantively changed her formally pled position in the case at the eleventh hour" in her Pretrial Conference Memorandum, in which she sought sole custody, without amending her pleadings. 

¶33 As previously discussed herein, the trial court is obligated to make custody and visitation awards that it determines are in the best interests of the child or children and such determinations include findings based on evidence of domestic violence and domestic abuse. Further, given our conclusion that domestic abuse and domestic violence do not need to be specifically pled to be considered by the trial court in its custody and award determinations, we discern no due process right that has been violated. However, the facts of this case also belie Father's lack of notice contention.

¶34 We agree with Mother's arguments that Father had notice that domestic violence/domestic abuse was an issue in this case and that he was on notice that Mother timely sought sole custody based on the presence of domestic violence/domestic abuse. As recounted by Mother in her appellate brief, Father was on notice of Mother's reliance on § 109 as early as April 2022 at the first Temporary Order hearing. Significantly, as previously noted, the GAL sent a preliminary statement via email to both parties' counsel on March 9, 2023, in which she identified:

domestic violence in the relationship between Mother and Father (emotional and verbal abuse, perpetrated on Mother by Father). The children also disclosed physical, verbal and emotional abuse on them by Father. Two of the children described not feeling safe in Father's care now unless the grandparents and/or other adults are around. Accordingly, I intend to recommend that the Court make a finding of domestic abuse, raising a rebuttable presumption that sole custody, joint legal or physical custody, or any shared parenting plan with the perpetrator of domestic violence (Father) is detrimental and not in the best interest of the children, and it is in the best interest of the children to reside with the parent who is not a perpetrator of domestic violence (Mother) consistent with Title 43 O.S. § 109

¶35 Further, according to the Certificate of Delivery, the GAL's "First Confidential Report" was emailed to the attorneys for the parties on June 9, 2023. 

¶36 As required by the pretrial conference order, on June 16, 2023, Mother timely filed her Pretrial Conference Memorandum, in which, among other matters, she set forth her prayer for relief and the expected legal and factual issues to be decided at trial. She requested sole custody consistent with and for the reason of domestic violence stated in the GAL's recommendations. except [for] what is set forth in the pretrial conference statement filed herein June 16, 2023, which is . . . in compliance with the prescheduling order . . . ten days before trial was actually set." 

¶37 We conclude Father's due process rights to notice and an opportunity to defend were not violated in this case.

IV. Whether the trial court erred in awarding attorney fees incurred in the case prior to Mother's request for a domestic violence finding from the trial court.

¶38 As he argued at the hearing on Mother's motion for attorney fees, Father argues on appeal that even if she is entitled to fees pursuant to § 112.6, she is only entitled to those fees incurred after she requested a finding of domestic violence; that is, only for fees incurred for the two-day June 2023 trial. He also reiterates his pleading, notice, and due process arguments. We are unpersuaded by Father's argument.

¶39 We agree with Mother's argument that her entitlement to attorney fees rests on what § 112.6 mandates. We further agree with her argument that no ambiguity is present in the statute and legislative intent is clearly expressed; thus, we do not resort to rules of statutory construction but rather look to the words of the statute. Section 112.6 provides, in part, that "In a dissolution of marriage . . . or custody proceeding, a victim of domestic violence or stalking shall be entitled to reasonable attorney fees and costs after the filing of a petition[.]" (Emphasis added.) The statute further provides: "The court shall order that the attorney fees and costs of the victimized party for the proceeding be substantially paid for by the abusing party prior to and after the entry of a final order." (Emphasis added.) The plain and unambiguous language reveals the legislative intent that if a trial court has made a finding of domestic violence in a dissolution of marriage or child custody proceeding, then the victimized party is entitled to reasonable attorney fees incurred for that proceeding. No limitation is stated in the statute that the award of fees applies to only a certain timeframe within those proceedings.

¶40 We conclude the trial court did not err in awarding Mother attorney fees and costs pursuant to § 112.6. 

CONCLUSION

¶41 For the reasons addressed herein, we conclude the trial court properly heard evidence of Father's domestic violence at the trial and properly considered and awarded reasonable attorney fees to Mother pursuant to 43 O.S. § 112.6

¶42 AFFIRMED.

HIXON, V.C.J., concurs, and HUBER, J., concurs specially.

HUBER, J., concurring specially:

¶1 I concur with the Majority's decision but write separately to discuss practical concerns potentially raised by 43 O.S. 2021 § 112.6

¶2 The mandatory language of § 112.6 creates a clear directive that courts must award attorney fees and costs upon the victim-applicant meeting the statutory requirements. However, § 112.6 does not specify at what stage of the proceeding the party must raise the issue of domestic violence and show by a preponderance of evidence that he or she is the victim of domestic abuse.

¶3 Because the trial court is obligated to make custody and visitation awards that are in the best interests of the child(ren), it would benefit all parties if the issue of domestic violence and the potential for a mandatory award of attorney fees and costs pursuant to § 112.6 was raised early in the dissolution of marriage, separate maintenance, or custody proceeding. This belief is in line with that of others that have addressed the statute. "The statute seems to contemplate that this determination be made soon after the petition is filed, perhaps in conjunction with the temporary order." Robert G. Spector and Carolyn S. Thompson, The Law of Attorney Fees in Family Law Cases, 69 Okla. L. Rev. 663, 677 (Summer 2017).

¶4 An early determination of domestic abuse by the trial court would allow the court to prioritize the best interest standard from the inception of the proceeding and throughout. A determination made early in the proceeding would assist the court in awarding custody using the rebuttable presumption of 43 O.S. 2021

§ 109.3 and setting appropriate visitation conditions. The court could ensure the litigation is focused on the vital issue of the child's best interest. An early determination of domestic abuse would avoid unnecessary legal expenses incurred due to a delayed determination of domestic violence. In addition, an early finding of domestic abuse under § 112.6 encourages parties to settle custody disputes.

FOOTNOTES

Husband v. Husband, 2010 OK CIV APP 42233 P.3d 383Thielenhaus v. Thielenhaus, 1995 OK 5890 P.2d 925

In a dissolution of marriage . . . or custody proceeding, a victim of domestic violence or stalking shall be entitled to reasonable attorney fees and costs after the filing of a petition, upon application and a showing by a preponderance of evidence that the party is currently being stalked or has been stalked or is the victim of domestic abuse. The court shall order that the attorney fees and costs of the victimized party for the proceeding be substantially paid for by the abusing party prior to and after the entry of a final order.

As used in the Protection from Domestic Abuse Act and in the Domestic Abuse Reporting Act, Sections 40.5 through 40.7 of this title, and Section 150.12B of Title 74 of the Oklahoma Statutes:

. . . .

2. "Domestic abuse" means any act of physical harm or the threat of imminent physical harm which is committed by an adult, emancipated minor, or minor child thirteen (13) years of age or older against another adult, emancipated minor or minor child who is currently or was previously an intimate partner or family or household member[.]

1. In every proceeding in which there is a dispute as to the custody of a minor child, a determination by the court that domestic violence, stalking, or harassment has occurred raises a rebuttable presumption that sole custody, joint legal or physical custody, or any shared parenting plan with the perpetrator of domestic violence, harassing or stalking behavior is detrimental and not in the best interest of the child, and it is in the best interest of the child to reside with the parent who is not a perpetrator of domestic violence, harassing or stalking behavior.

2. For the purposes of this subsection:

a. "domestic violence" means the threat of the infliction of physical injury, any act of physical harm or the creation of a reasonable fear thereof, or the intentional infliction of emotional distress by a parent or a present or former member of the household of the child, against the child or another member of the household, including coercive control by a parent involving physical, sexual, psychological, emotional, economic or financial abuse[.]

A. In every case involving the custody of, guardianship of or visitation with a child, the court shall consider for determining the custody of, guardianship of or the visitation with a child whether any person seeking custody or who has custody of, guardianship of or visitation with a child:

. . .

4. Has been convicted of domestic abuse within the past five (5) years;

. . .

7. Is residing with a person who has been convicted of domestic abuse within the past five (5) years[.]

. . . .

B. There shall be a rebuttable presumption that it is not in the best interests of the child to have custody or guardianship granted to a person who:

. . .

4. Has been convicted of domestic abuse within the past five (5) years;

. . .

7. Is residing with a person convicted of domestic abuse within the past five (5) years[.]

. . . .

E. For purposes of this section:

. . .

2. "Domestic abuse" has the same meaning as such term is defined in Section 60.1 of Title 22 of the Oklahoma Statutes[.]

Stricklen v. Multiple Injury Fund, 2024 OK 1542 P.3d 858Id. (footnote omitted).

Duke:

Mother argues the trial court misapplied two statutes, 43 O.S. 2011 § 112.222 O.S. Supp. 2016 § 1922 O.S. § 60.1

2020 OK 6Duke Court, however, specifically noted the definitional directive in § 112.2. Id. ¶ 18 n.19, 457 P.3d at 1079 n.19.

43 O.S. 2021 § 109.3

In every case involving the custody of, guardianship of or visitation with a child, the court shall consider evidence of domestic abuse, stalking and/or harassing behavior properly brought before it. If the occurrence of domestic abuse, stalking or harassing behavior is established by a preponderance of the evidence, there shall be a rebuttable presumption that it is not in the best interest of the child to have custody, guardianship, or unsupervised visitation granted to the person against whom domestic abuse, stalking or harassing behavior has been established.

No reference to 22 O.S. § 60.1

43 O.S. § 110

Many times [Father] was asked how [Mother's] working, making more money than him, [Father] being at home, and how that made him feel as a man, the Court does not care. The Court wonders how [Father] felt as a father, a parent, knowing that the children have undergone so much emotional pain, so much fear, not to forget the physicality too.

The Court does find domestic violence has been shown here by [a] preponderance of the evidence. The Court believes there is intentional infliction of emotional distress that led to this marriage dissolution. The Court does believe that there were threats of anticipated fear to come, and it created an environment in the home that stifled any kind of growth or development.

(Emphasis added.) Mother also testified that Father made punching motions within inches of her face while four times saying the word "stab." She testified she was afraid he was going to harm her. The trial court specifically found as follows:

The Court agrees with [Father's] counsel that it would be hard to sit here and listen to [Father] spew the toxicity that he did all over his family, mother and children. [Mother] testified, Guardian ad Litem testified, they had to secrete themselves. They walked on eggshells so as not to create any disturbance, and not to mention [Mother's] unrefuted testimony regarding the assault when she demonstrated the repeating punching motions as [Father] was speaking to her in one of the recordings which we cannot see obviously.

(Emphasis added.) Father offers no argument about why the trial court's finding of "physicality" perpetrated by Father against the children and his "assault" upon Mother based on the evidence is insufficient to meet the definition of domestic abuse (any act of physical harm or threat of imminent physical harm) pursuant to § 60.1. We conclude the evidence is sufficient to meet even the more restricted meaning of domestic abuse for which Father presses. See generally, Curry v. Streater, 2009 OK 5213 P.3d 550O'Brien v. Berry, 2016 OK CIV APP 28370 P.3d 836

Broadbent Court did not review the trial court's order awarding sole custody to the mother on a finding of domestic violence against the father nor did it involve the propriety of the award of attorney fees pursuant to § 112.6.

[Father] complains that [Mother] never brought up domestic violence, which is not entirely true because even predecessor Judge Ryan [the judge who presided over the temporary order proceedings] picked up on domestic violence, and against his better judgment, because of an agreement reached by the parties, he rubber-stamped the agreement for joint custody at the Temporary Order proceedings.

As set forth above, the trial court also referenced Judge Ryan's June 3, 2022 ruling concerning Father's behavior toward Mother in the Order.

Hubert, has stated that the mandatory award of attorney fees pursuant to § 112.6 creates a substantive issue. Rather, he argued, "That's from me. That's my argument."

In his Reply Brief, Father also argues that a 2024 amendment to 43 O.S. Supp. 2024 § 110Cox Okla. Telecom, LLC v. State ex rel. Okla. Corp. Comm'n, 2007 OK 55164 P.3d 150Cf. Tulsa Ambulatory Procedure Ctr., LLC v. Olmstead, 2024 OK 57558 P.3d 374unsupported by convincing argument or authority, unless it is apparent without further research that they are well taken.'" (emphasis added) (citation omitted)).

Hubert make no statement regarding the pleading of domestic abuse or domestic violence as a substantive issue, but also the Court's reasoning further supports the conclusion reached herein that § 112.6's mandatory fee award is concerned with domestic violence, not the limited domestic abuse criteria set forth in 22 O.S. § 60.1

In our view, Roodzant v. Roodzant, 2020 OK CIV APP 50476 P.3d 938 Roodzant, the parties stipulated that the mother should be granted sole custody of the children, and the trial court awarded the father visitation in accordance with the schedule set by the court. Id. ¶ 4, 476 P.3d at 939. Nonetheless, the court received evidence concerning domestic violence and "specifically found there had been a domestic violence incident during the marriage." Id. ¶ 13, 476 P.3d at 940. Though not the same issue as presented in this appeal, the Roodzant Court stated:

[The father] argues that [the mother] raised the issue of domestic violence for the first time in her motion to reconsider [and not in her application for attorney fees]. Although supported by the record, this fact is not dispositive of the issue before us because . . . the trial court specifically found a domestic violence incident occurred during the marriage, and domestic violence was therefore already an issue in the case[.]

Id. ¶ 16, 476 P.3d at 941. The Roodzant Court stated: "This finding triggers a court, if requested, to award attorney fees and costs pursuant to 43 O.S. 2011 [now 2021] § 112.6, because such an award pursuant to this statutory provision is mandatory." 2020 OK CIV APP 50Roodzant Court held that even though the mother had not requested fees for domestic abuse pursuant to § 112.6 in her attorney fee application, § 112.6 is applicable in deciding the attorney fee issue; therefore, the trial court abused its discretion in failing to award the mother her requested attorney fees. Roodzant, ¶ 14, 476 P.3d at 941. The limitation is that the fees awarded must be reasonable. Id. ¶¶ 17-18, 476 P.3d at 941. We also note that while Mother did not plead domestic abuse as the basis of an attorney fee award in her petition, she did request "recovery of her reasonable attorney fees and costs[.]"

See note 32 and accompanying text, infra.

testify as to the relationship between the parties and the relationship between each party and the minor children. Anticipated to testify as to the course of her investigation, various witnesses interviewed, home visits conducted, assessments made, and any collateral interviews or resources utilized in her recommendations provided to the Court. Anticipated to testify as to her recommendation as a Guardian Ad Litem.

Father was clearly on notice that her recommendation was sole custody to Mother for the reasons of domestic violence/domestic abuse.

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105