OSCN Found Document:DUGGAN v. DUGGAN

 

 
 DUGGAN v. DUGGAN2026 OK CIV APP 12Case Number: 122919Decided: 05/07/2026Mandate Issued: 05/07/2026THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA DIVISION III
Cite as: 2026 OK CIV APP 12, __ P.3d __

 

In Re the Marriage of: MALLORY DUGGAN, Petitioner/Appellee,
vs.
JAKE DUGGAN, Respondent/Appellant.

 

APPEAL FROM THE DISTRICT COURT OF
POTTAWATOMIE COUNTY, OKLAHOMA

HONORABLE EMILY MUELLER, TRIAL JUDGE

REVERSED AND REMANDED

Amanda C. Dockrey, DOCKREY LAW PLLC, Shawnee, Oklahoma, For Petitioner/Appellee,

MaryGaye LeBoeuf, Oklahoma City, Oklahoma, -and - Charles M. Laster, Shawnee, Oklahoma, For Respondent/Appellant.

TIMOTHY J. DOWNING, PRESIDING JUDGE:

¶1 Appellant, Jake Duggan (Father), appeals from the trial court's February 5, 2025, Findings on Motions to Modify (Order), modifying Father's and Mallory Duggan's (Mother), joint custody plan. The trial court's order made best interest of the child findings but lacked a specific determination as to whether equal access to the child by Father would be detrimental as required by 43 O.S.2021, § 110.1

BACKGROUND

¶2 Father and Mother were married on September 4, 2009. One child, E.D. was born in 2018. A Decree of Dissolution of Marriage (Decree) was filed on September 3, 2019. Pertinent to this appeal, the Decree awarded the parties joint custody, with Father having E.D. on his regular days off work. Father was granted five consecutive days of custodial time for vacation twice per year and the parties were to share custodial time on Christmas Eve, Christmas, Thanksgiving, and Fourth of July.

¶3 On August 23, 2023, Father filed a Motion to Modify Custody alleging a material and permanent change in conditions had occurred since the entry of the Decree. Father claimed that E.D. was now of school age and it would be in E.D.'s best interest to spend "equal time in the custody of both parents." On August 28, 2023, Mother filed an Amended Motion to Modify Custody, Visitation, and Child Support alleging it was in E.D.'s best interest for Mother to have sole custody. Mother made various allegations in support of her contention that a permanent, substantial, and material change of conditions occurred. A Guardian ad Litem (GAL) was appointed by agreement. The GAL issued a final report on November 18, 2024 recommending that joint custody remain intact and the parties arrange for counseling for E.D. The GAL further recommend that the current schedule stay in place, or if the trial court determined a more equal schedule would be appropriate, E.D. "might be well-served by the change."

¶4 On November 18-19, 2024, the trial court held a hearing on the competing motions to modify. The evidence demonstrated that both Father and Mother are good parents and act in the best interests of E.D. However, the evidence also demonstrated that, at times, both Mother and Father have failed to communicate about various situations involving E.D., have acted spitefully towards one another, and have acted negatively towards one another in E.D.'s presence.

¶5 On February 5, 2025, the trial court issued its Order wherein it determined that a material and substantial change occurred warranting a change in custody. The trial found, inter alia, that the parents neither communicate with one another nor work together for the best interests of E.D. The trial court noted some of the various situations that demonstrate the parents' inability to cooperate or communicate. The trial court further noted its concerns about Father's new wife. Ultimately the trial court found that the joint custody plan was no longer in E.D.'s best interest and named Mother as primary custodian and final decision-maker. The trial court decreased Father's visitation to two days each week, except for the second week per month wherein Mother will keep E.D. Holidays and summers were ordered to follow the standard visitation schedule. From this Order, Father appeals.

STANDARD OF REVIEW

¶6 Custody and visitation cases are of equitable cognizance and "the findings and decree of the trial court cannot be disturbed unless found to be against the clear weight of the evidence or an abuse of discretion." Mullendore v. Mullendore, 2012 OK CIV APP 100288 P.3d 948

¶7 Father raises an issue of statutory construction which presents a question of law that we review de novo. Skoch v. Skoch, 2025 OK CIV APP 33Id. (quoting Rickard v. Coulimore, 2022 OK 9505 P.3d 920

ANALYSIS

¶8 Father raises two claims of error. First, Father argues the trial court erred in failing to make specific findings of fact and conclusions of law regarding detriment as required by 43 O.S.2021, § 110.1

¶9 Father's challenge to the trial court's failure to make specific findings of fact and conclusions of law with regard to whether equal access to E.D. was detrimental as required by Section 110.1 is a question of statutory interpretation. This Court's "inquiry begins with the text of the statute and--absent unresolvable ambiguity--ends with the text." Hall v. Galmor, 2018 OK 59427 P.3d 1052Matter of I.T.S., 2021 OK 38490 P.3d 127In re City of Durant, 2002 OK 5250 P.3d 218Id.

¶10 Section 110.1 states:

It is the policy of this state to assure that minor children have frequent and continuing contact with parents who have shown the ability to act in the best interests of their children and to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage. The court may consider evidence of the ability of the parents to cooperate on issues related to their minor children, as well as evidence of domestic violence, stalking, or harassment as defined in Section 109 of this title. To effectuate this policy, if requested by a parent, the court may provide substantially equal access to the minor children to both parents at a temporary order or final hearing, unless the court finds that shared parenting would be detrimental to the child. The court shall issue findings of fact and conclusions of law to support its decision after a final hearing on the merits.

43 O.S.2021, § 110.1

¶11 Section 110.1 provides a presumption that equal access to a child should be granted unless such access would be detrimental to the child. See Snyder v. League, 2024 OK CIV APP 21557 P.3d 1081

¶12 In this case, the trial court acknowledged the shared parenting policy of Section 110.1. The trial court further acknowledged that as part of the shared parenting policy of Section 110.1 the trial court may consider, inter alia, the parents' ability to cooperate. Despite acknowledging Section 110.1, the trial court failed to make the specific finding required to overcome the presumption that parents should have equal access to the child unless such access would be detrimental. The trial court denied Father's request for equal access without making the required statutory finding, modified the joint custody plan by making Mother the primary custodian, and decreased Father's time with E.D. 

CONCLUSION 

¶13 Because we find the trial court erred in failing to make specific findings of fact and conclusions of law as required by 43 O.S.2021, § 110.1

¶14 REVERSED AND REMANDED.

MITCHELL, J., concurs and PRINCE, V.C.J., specially concurs.

PRINCE, V.C.J., specially concurring:

¶1 I fully concur in the Opinion of the Court and write this special concurrence to explain my view of the case. First, while the third sentence of § 110.1 initially provides discretion to the trial court to make the temporary and later final decision concerning child custody (with the phrase "may provide substantially equal access . . ."), that discretion evaporates later in the sentence with the insertion of the phrase "unless the court finds . . . [it] would be detrimental to the child." See Clark v. Miller, 1981 OK CIV APP 38631 P.2d 1343Snyder v. League, 2024 OK CIV APP 21557 P.3d 1081

¶2 Next, in my view, the phrase "detrimental to such child", as used in the third sentence of 43 O.S. 110.1, only differs by degree from the "best interest" standard. It would defeat the plain meaning of § 110.1 and well-established precedent to elevate the meaning of "detrimental" to absorb and overtake the application of the "best interest of the child" standard. See Williamson v. Williamson, 2022 OK CIV APP 14517 P.3d 1000See Harmon v. Harmon, 1997 OK 91943 P.2d 599E.g., 11 O.S. § 37-115See www.merriam-webster.com/dictionary/detrimental (defining the term "detrimental as "obviously harmful : damaging."). Thus, in my view, the phrase "detrimental to such child" should be treated as a subset or subpart of the "best interest" analysis. See Redmond v. Cauthen, 2009 OK CIV APP 46211 P.3d 233

¶3 Thirdly, although the two standards have been used in prior decisions in a synonymous fashion, the key fact that the trial court must identify is the nexus between the behavior at issue and its impact, if any, on the child. See Gorham v. Gorham, 1984 OK 90692 P.2d 1375Fox v. Fox, 1995 OK 87904 P.2d 66as modified on reh'g (Oct. 9, 1995) (where the Court found that "[t]here is no evidence that the mother's behavior has any adverse effect on the children" for purposes of the nexus requirement in a modification of sole custody); Childers v. Childers, 1950 OK 31202 Okla. 409214 P.2d 722

¶4 Lastly, although the Order at issue here identified the evidentiary basis for its "best interest" analysis and cited § 110.1, the trial court, in my view, failed to engage in an appropriate analysis or make the requisite finding under § 110.1. See Thomas v. Owens, 1952 OK 64206 Okla. 50241 P.2d 1114See Gorham v. Gorham, supra.

FOOTNOTES

detrimental to the child." 43 O.S.2021, § 110.1Id. The Legislature's 2021 amendment also made the statute applicable to both "temporary order[s] or final hearing[s]", rather than just an application to temporary orders. Id.